IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00763-WDM-MEH

ISSIAKA I. NAMOKO,

    Plaintiff,

v.

COGNISA SECURITY, INC.,

    Defendant.

## RECOMMENDATION ON MOTION TO ENFORCE SETTLEMENT

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendant's Motion to Enforce Settlement Agreement ("Motion to Enforce") [Docket #98]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R 72.1.C, the District Judge assigned to this case has referred the Motion to Enforce to this Court for a recommendation [Docket #99]. The Court held an evidentiary hearing in this matter on May 8, 2006. For the reasons set forth below, the Court recommends that Defendant's Motion to Enforce Settlement Agreement be **granted**.

**I.    Facts**

The record establishes the following facts. Plaintiff filed this lawsuit *pro se* on April 26, 2005. He continued *pro se* until Craig Cornish of the law firm Cornish & Dell'Olio entered an appearance on Plaintiff's behalf on February 14, 2006. On March 27, 2006, this Court held a Settlement Conference in this case. Although the parties did not reach a settlement agreement at that time, a second settlement conference was scheduled for May 23, 2006 based on the Court's belief that the parties were not far apart in their settlement positions.

On April 21, 2006, Ms. Dell'Olio contacted Defendant's counsel, Mr. Ferguson, about the possibility of settlement. On April 24, 2006, Ms. Dell'Olio communicated a settlement demand over the telephone to Defendant's counsel. This demand was accepted by Defendant's counsel, Mr. Ferguson, on April 25, 2006, again by telephone, "conditioned upon the parties' execution of a mutually-acceptable Release and Settlement Agreement and upon an email confirmation that a settlement had been reached." Dock. #98-2, ¶7; *see* Dock. #98-2, Exh. 1. Ms. Dell'Olio confirmed these terms during that telephone conversation. *Id.*; *see* Dock. #98-2, Exh. 2.

On April 26, 2006, Mr. Ferguson sent via email to Mr. Cornish and Ms. Dell'Olio a Release and Settlement Agreement ("Agreement") for Plaintiff to sign. Dock. #98-2, Exh. 3. He indicated that he would be out of the office until Friday and that any questions or comments on the Agreement should be directed to Mr. Finnerty. *Id.* On April 26, 2006, Plaintiff signed the Agreement, had his signature notarized, and, in fact personally initialed every page. Ms. Abramson, a Legal Secretary at Cornish & Dell'Olio, emailed the Agreement signed by Mr. Namoko to Defendant's counsel (Mr. Ferguson and Mr. Finnerty) that same day. *Cf.* Dock. #98-3, Exh. 1. Mr. Finnerty forwarded the Agreement to a representative of Defendant, who also signed the Agreement. The fully executed Agreement was sent back to Mr. Finnerty at 11:30 a.m. on April 27, 2006, and Mr. Finnerty forwarded it to Ms. Dell'Olio at 11:46 a.m. Dock. #98-3, Exh. 2.

At 11:29 a.m. on April 27, 2006, Ms. Dell'Olio sent an email to Mr. Ferguson, but not Mr. Finnerty, indicating that Plaintiff no longer wanted to settle the case. Dock. #98-2, Exh. 4. At the hearing, it was established that Mr. Finnerty did not know of this email before receiving the fully executed Agreement from Defendant's representative. Because Mr. Ferguson was out of the office that day, he did not respond to Ms. Dell'Olio's email until April 28, 2006. At that time, he informed

2

Ms. Dell'Olio that he believed that the parties had reached a settlement when he accepted Plaintiff's offer on April 25, 2006. The evidence at the hearing established that at the time Defendant's counsel learned of Plaintiff's intent to revoke the settlement, both parties had fully executed the Agreement.

At the hearing, Plaintiff argued, without further factual basis, that he was forced to sign the Agreement by his counsel. Plaintiff expressed his bewilderment that during the settlement discussions of April 21-26, 2006, Ms. Dell'Olio was the person advising him, rather than Mr. Cornish. At the hearing Plaintiff refused to waive the Attorney/Client privilege, and therefore, failed to produce any evidence in support of any contention that he was coerced into signing the Agreement. No facts surrounding his signing of the Agreement, other than that it occurred at his counsel's office and that Plaintiff actually signed the Agreement, were presented at the hearing.

During the hearing, prior to withdrawing from representation,[1] Plaintiff's counsel represented that Plaintiff entered into a fee agreement under which Plaintiff retained the firm of Cornish and Dell'Olio and not simply attorney Craig Cornish. At the hearing, Defendant's counsel stated the following:

(1) Ms. Dell'Olio had express authority to enter into the settlement agreement;
(2) Ms. Dell'Olio made the offer to Defendant on behalf of Plaintiff;
(3) On April 24, 2006, Ms. Dell'Olio assured Mr. Ferguson that she had express authority from Mr. Namoko to make the offer;
(4) Defendant accepted the offer;
(5) Mr. Ferguson and Ms. Dell'Olio exchanged e-mails confirming the agreement;
(6) Defendant sent to Plaintiff a settlement agreement and release of claims that Plaintiff signed and returned to Defendant;
(7) Defendant signed and returned the agreement to Plaintiff's counsel;

---

[1] The Court allowed an opening statement from Defendant's counsel and Plaintiff's counsel, and then heard Plaintiff's counsel's motion to withdraw as counsel, which was granted. Plaintiff's counsel, Ms. Dell'Olio, ultimately testified in the hearing (after her withdrawal as counsel) but appropriately refused to answer questions that would reveal attorney-client communications, as Plaintiff steadfastly refused to waive the privilege.

(8) The signed agreement is the best evidence of Plaintiff's intent to be bound by the terms of the settlement;
(9) Under these circumstances there is a presumption that Plaintiff's counsel had express authority to settle the claims;
(10) Under these circumstances the party denying the existence of a valid agreement has the burden of proving that such authorization was not given; and
(11) The most Mr. Namoko could show was that he changed his mind, and changing one's mind is not enough to set aside a valid settlement agreement.

On the record, Ms. Dell'Olio stated that she could present no testimony that contradicted these representations. During the hearing, the Defendant called Mr. Finnerty, Mr. Ferguson, and Ms. Dell'Olio as witnesses. Mr. Namoko had the opportunity to examine, and did examine, each of these witnesses. Mr. Namoko did not call any witnesses but was permitted to present his testimony by narrative.

**II.     Discussion**

**A.     Legal Standard for Enforcing a Settlement Agreement**

A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it. *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (citing *United States v. Hardage,* 982 F.2d 1491, 1496 (10th Cir.1993)). Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law. *United States v. McCall,* 235 F.3d 1211, 1215 (10th Cir. 2000). A court may enforce a settlement agreement only if it constitutes an enforceable contract. *H.W. Houston Constr. Co. v. District Ct.,* 632 P.2d 563, 565 (Colo.1981) (en banc); *Recreational Dev. Co. of Am. v. American Constr. Co.,* 749 P.2d 1002, 1005 (Colo. Ct. App.1987).

The Supreme Court has specifically stated that in a discrimination claim such as this, a plaintiff "may waive his cause of action . . . as part of a voluntary settlement." *Alexander v. Gardner-Denver*

*Co.*, 415 U.S. 36, 52 (1974). However, this Court must determine if the "employee's consent to the settlement was voluntary and knowing." *Id.* at 52 n.15. Under federal law, "an oral agreement to settle a Title VII case is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute." *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981). "A party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient - 'If a party to a Title VII suit who has previously authorized a settlement changes his mind . . . , that party remains bound by the terms of the agreement.'" *Glass v. Rock Island Refining Co.*, 788 F.2d 450, 454-55 (7th Cir. 1986).

To the extent that this analysis is governed by Colorado law, under such law the essential elements of a settlement agreement are a definitive offer and acceptance, consideration, and parties who have the capacity and authority to agree. *Citywide Bank of Denver v. Herman,* 978 F. Supp. 966, 977 (D. Colo. 1997) (quotation marks and citation omitted).

> An enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration. *Denver Truck Exchange v. Perryman,* 134 Colo. 586, 307 P.2d 805 (1957). An offer is a manifestation by one party of a willingness to enter into a bargain. Restatement (Second) of Contracts 24 (1979). An acceptance is a manifestation of assent to the terms of the offer . . . .

*Industrial Prods. Int'l v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. Ct. App. 1997). Moreover, a written document reflects the parties' intent to contract when it identifies the consideration for which the parties bargained and contains their signatures. *Pierce v. St. Vrain Valley Sch. Dist.,* 981 P.2d 600, 603 (Colo. 1999) (en banc). "Colorado public and judicial policies favor voluntary agreements to settle legal disputes." *Gates Corp. v. Bando Chem. Indus.*, 4 Fed. Appx. 676, 682

5

(10th Cir. Feb. 16, 2001) (citations to Colorado cases omitted).

### B.     This Is an Enforceable Settlement Agreement

In this case, Plaintiff made an oral offer to settle, through counsel, to Defendant, on April 24, 2006.[2] This offer was accepted orally the following day by Defendant's counsel.  On April 26, 2006, the Defendant presented its written offer to settle via e-mail.  The Plaintiff accepted this written offer by signing it, notarizing it, and initialing each page of it.  At the very latest, on April 26, 2006, Plaintiff's written acceptance of Defendant's written offer formed an enforceable settlement agreement.   Here, Plaintiff made an oral offer containing the monetary term of the Agreement; Defendant accepted; Defendant then made a written offer containing all the terms of the Agreement; and Plaintiff's written acceptance made it, under any interpretation of federal or Colorado law, an enforceable agreement.

Even the e-mails reflecting this offer and acceptance list the consideration given for the Agreement, although the actual amount was redacted from the pleadings filed with the Court to preserve the confidentiality of the Agreement.  These emails reflect the parties' agreement to settle this case for the consideration mentioned.  These emails do indicate that settlement is "subject to the parties' entering into a mutually-acceptable release and settlement agreement."  Such an Agreement was entered by the parties when Plaintiff signed the Agreement on April 26, 2006.  Defendant then signed the Agreement on the morning of April 27, 2006.  As the Tenth Circuit noted in *Gates Corp.*, "'Whether or not the parties have completed their negotiations . . . is always dependent upon the

---

[2]Although the actual terms of the settlement agreement are confidential and, for that reason, were not made part of the record at the hearing, the Court will take judicial notice that the terms of the signed agreement were substantially more favorable to Plaintiff than the terms that the Defendant offered at the prior Settlement Conference.

circumstances of the particular case.'" 4 Fed. Appx. at 683 (citation to Colorado case omitted). Here, the record establishes that the negotiations were completed, and the binding contract was made.

Plaintiff argues that he should not be bound by this Agreement, because he was forced to sign the Agreement by his counsel.[3] Although duress can be a sufficient ground to rescind a contract, Plaintiff presented no evidence to establish duress. In fact, Plaintiff refused to waive his attorney/client privilege, and therefore, refused to discuss any of the circumstances surrounding his signing of the Agreement. Further, the Court finds that Plaintiff's testimony on this point is not credible. Both at the Settlement Conference and at the hearing, the Court had the opportunity to observe Plaintiff's demeanor. He is not a person who is easily intimidated. In fact, he demonstrated remarkable self-sufficiency and fortitude, directly to the Court, on both occasions. Further, he is no novice to litigation. He has initiated and litigated three federal lawsuits *pro se* in this District. His pleadings show considerable intelligence. He appears quite capable of making up his own mind and not permitting others to influence his decisions. He simply appears to have changed his mind concerning his recovery under the Agreement. The Court finds that Mr. Namoko's conduct in this matter was knowing and voluntary.

The facts in this case do not even approach the standard necessary under Colorado law for establishing duress. *See Vail/Arrowhead, Inc. v. District Court*, 954 P.2d 608, 612-13 (Colo. 1998) (citations omitted):

---

[3] At the hearing Plaintiff mentioned in passing his belief that his counsel was not moving quickly enough to prosecute this case. If this is an allegation that insinuates that Plaintiff was forced to settle because of his counsel's diligence, the Court strongly disagrees with Plaintiff's perception. His counsel entered his case very late in the game, five months after discovery had commenced. They quickly moved to file a Second Amended Complaint, a motion that was granted. From the viewpoint of the Court, Plaintiff's counsel was prosecuting this case appropriately.

7

> A contract is voidable on the grounds of duress if a party's manifestation of assent is induced by an improper threat that leaves no reasonable alternative. . . . [A]n improper threat is one that is "so shocking that the court will not inquire into the fairness of the resulting exchange," or a threat "in which the impropriety consists of the threat in combination with resulting unfairness." . . . A threat is not improper, however, if the resulting exchange is on fair terms.

Here, there was no threat of any kind suggested by Plaintiff, let alone an improper one. *Cf. Wiesen v. Short*, 604 P.2d 1191, 1192 (Colo. Ct. App. 1979) (having the advice of an attorney and an opportunity to reflect on the decision to enter a contract negate a claim of duress).

Because Defendant established the existence of a valid contract and Plaintiff failed to produce any evidence supporting his claim of duress, the Court concludes that the parties entered a valid, enforceable Agreement to which the parties must remain bound.

## III.   Conclusion

Accordingly, for the reasons stated above, the Court RECOMMENDS that Defendant's Motion to Enforce Settlement Agreement [Filed May 2, 2006; Docket #98] be **granted**. Defendant has established that the parties entered a valid Settlement Agreement, and Plaintiff has failed to establish that he was forced to sign this Agreement. Pursuant to the terms of the Settlement Agreement, the Court further RECOMMENDS that his case be **dismissed with prejudice**, each party to bear his own costs of court and attorney's fees. Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[4]

---

[4] The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file

Dated at Denver, Colorado this 11th day of May, 2006.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).